UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

URIAH PRODUCTS, LLC,

               Plaintiff,

    v.                                   CAUSE NO. 3:24cv873 DRL-SJF

CURT MANUFACTURING LLC,

               Defendant.

OPINION AND ORDER

Uriah Products, LLC filed this patent infringement action against Curt Manufacturing LLC related to Uriah's patent for an adjustable hitch assembly. Curt counterclaimed for declaratory judgments of noninfringement and invalidity (counts 1 and 2); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and Indiana law (counts 3 and 5); bad faith assertion of patent infringement, Ind. Code. § 24-11-5-1 (count 4); and tortious interference with business relationships (count 6). Uriah moves to dismiss counts 3-6 under Rule 12(b)(6). The court grants the motion in part.

BACKGROUND

The court takes the well-pleaded allegations and reasonable inferences from the amended counterclaim as true in deciding this motion. Curt manufactures and distributes towing products and truck accessories [15 ¶ 8]. This includes its AlumaLite hitches with adjustable ball mounts, which it sells through distributors and online retailers like Amazon [*id.* ¶ 13-16].

Uriah manufactures and distributes trailer parts and accessories, and it holds U.S. Patent No. 10,857,846 ('846 patent) for an adjustable hitch assembly [*id.* ¶ 1, 19]. Some of Uriah's products, like its Aluma-Tow adjustable ball hitch, compete directly with certain Curt AlumaLite-

branded products [*id.* ¶ 20-21]. Uriah contends that Curt's AlumaLite hitch ball mounts of infringe on its '846 patent [*id.* ¶ 18].[1]

The '846 patent describes a trailer hitch bracket with a drawbar (that would fit into a vehicle's hitch receiving hole) and a rectangular, perpendicular "tenon" with pinholes that allow a hitch ball mounting block to be adjusted up and down to different heights [*id.* ¶ 33-35]. The mounting block is shaped to fit around the tenon and includes pinholes to secure it at different heights with pins [*id.* ¶ 36-37]. A rounded portion of the mounting block extends out on the side opposite the drawbar; a vertical hole runs through this portion into which hitch balls can fit [*id.* ¶ 35, 41-42]. These hitch balls are secured with screws that thread through holes in the part of the mounting block adjacent to the tenon when pinned [*id.* ¶ 41-42]. Two diagrams from the counterclaim are reproduced below to assist with this understanding [*id.* ¶ 35, 41].



*Diagram 1*

---

1 These products include the AlumaLite Adjustable Aluminum Hitches with Dual Ball, 9-1/2" Drop (#45366), 7-1/2" Drop (#45365), 3-1/2" Drop (#45364), and 5-1/2" Drop (#45363) [15 ¶ 18].



*Diagram 2*

Curt says the '846 patent only describes a product in which the screws (that secure the hitch balls) thread through holes in the wall of the mounting block that sits adjacent to the tenon, the so-called "rear wall of the mortise hole" [*id.* ¶ 43]. Curt alleges that its products instead have receiving holes in the sidewalls of the hitch ball mounting block, portions of the mounting block that do not sit adjacent to the tenon (as seen in Diagram 3) [*id.*].



*Diagram 3*

Curt says there is no tenable explanation for contending that its products infringe Uriah's patent when they are formed with a pin-receiving hole in the rear wall of the mortise hole [*id.* ¶ 45, 57].

Curt also says Uriah presents another meritless theory—that the entire portion of the mounting block into which hitch balls are secured constitutes the rear wall of the mortise hole [*id.* ¶ 46-50]. Curt calls this position irrational and indefensibly broad, and counters that this renders the '846 patent invalid based on patented prior art (dubbed "Anderson") that is known to Uriah and was previously used by the United States Patent Office to distinguish the '846 patent [*id.* ¶ 51-53]. Curt says the Anderson prior art also has receiving holes in the sidewalls of the hitch ball mount, which don't sit adjacent to the tenon (as shown in Diagram 4) [*id.* ¶ 54].



*Diagram 4*

Curt says its products, accused as infringing, are instead like the Anderson patent such that Uriah knew its allegations were objectively baseless when it sued [*id.* ¶ 55-58]. Curt says no reasonable litigant could realistically expect to prevail in a dispute alleging that the Curt products infringe the '846 patent [*id.* ¶ 59].

According to Curt, this accusation of patent infringement is part of a widespread and coordinated campaign by Uriah to use litigation, not as a genuine effort to protect patent rights, but instead to strongarm various competitors through baseless and bad faith patent infringement actions [*id.* ¶ 22-28]. It says Uriah is aware that Curt's products don't infringe on the '846 patent, but it maintains its baseless infringement claims against the company anyway [*id.* ¶ 30-31]. Curt views Uriah's strategy as foisting a costly and time-consuming legal battle on Curt to disrupt its business in hopes of leveraging a favorable settlement [*id.* ¶ 32].

Curt also says the campaign extends beyond litigation—that Uriah falsely reported to online retailers, including Amazon, that the Curt products infringed the '846 Patent [*id.* ¶ 60-61]. It says this was intended to harm Curt's business relationships, reputation, and competitive position [*id.* ¶ 89]. Curt alleges the report included statements that Uriah knew were false, misleading, and objectively baseless—namely, that the Curt products infringed the '846 patent when Uriah well knew they didn't [*id.* ¶ 63]. As a result of these statements, Amazon notified Curt's authorized vendors and distributors of the infringement claim and removed the listings of these Curt products being sold by vendors and distributors [*id.* ¶ 65-66].

## STANDARD

Though this is a patent case, the prevailing Rule 12(b)(6) standard applies. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1346-47 (Fed. Cir. 2018) (regional circuit law applies to procedural issues not specific to patent law). In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

For certain claims, a complainant must not just plead claims plausibly, but with particularity. Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Because Rule 9(b) sets a standard for pleading without creating a vehicle for its enforcement, this heightened pleading standard often gets presented through the guise of a Rule 12 motion. *See* 5A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1300 (4th ed. 2018). A pleading must identify specifics—often "the who, what, when, where, and how" of fraud or the specifics pertaining to another qualifying claim. *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

DISCUSSION

A. *Unfair Competition and Tortious Interference (Counts 3, 5, and 6).*

At base, the counterclaims rest on two overriding actions: (1) that Uriah made false representations to online retailers (including Amazon) that had the effect of disrupting Curt's business with other distributors; and (2) that Uriah pursued an infringement suit in bad faith. The unfair competition theory (under both federal and state law) and the tortious interference theory are based on false representations in the marketplace.[2] These theories ultimately may have different elements when it comes time for proof, and one or more may require some unique operative facts beyond this simplistic restatement of the claim, but they share their footing in pleading by resting on these false representations. And for two (federal and state unfair competition), they are often otherwise coextensive under the law and treated by the parties today just so. *See, e.g., Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp.2d 1015, 1040 (N.D. Ind. 2012); *see also Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321 (Fed. Cir. 2006).

The Lanham Act forbids a "false or misleading representation of fact" used "in commerce" about "any goods or services" if that false representation likely causes confusion, mistake, or deception about the origin of goods or another person's commercial activities, or, if in commercial advertising, the statement "misrepresents the nature, characteristics, [or] qualities" of its or another person's goods. 15 U.S.C. §§ 1125(a)(1)(A), (a)(1)(B); *see also Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-48 (Fed. Cir. 1999); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d

---

[2] At the pleading stage, the court remains cognizant of the difference between claims and legal theories. *See, e.g., Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025); *Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). A separate state law unfair competition claim (albeit raised in the same count) rests on the allegation of a bad faith lawsuit, which is addressed later.

813, 819 (7th Cir. 1999). Curt alleges and argues only an unfair competition claim based on a false advertisement, so its pleading must plausibly allege that Uriah made a false representation in a commercial advertisement. *See Zenith*, 182 F.3d at 1348; *see also Hot Wax*, 191 F.3d at 819.[3]

This claim, and the arguments for it, marry the federal theory with the state law unfair competition theory. Under Indiana law, unfair competition describes an open-ended category of "new torts" or "nameless forms of unfair competition" that are recognized to protect commercial values, *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598-99 (Ind. 2001), including false representations about another's goods, often viewed as a subspecies of fraud, *see, e.g., Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 819 (Ind. 2006). In pleading a state law unfair competition theory, Curt returns to the same alleged false representations to online retailers.

In this particular case, even the tortious interference theory, based as it is on alleged false representations, is a natural cousin to these unfair competition theories. Indeed, unfair competition (at least stateside) historically developed as a "subspecies of the class of torts known as tortious interference with business or contractual relations." *Felsher*, 755 N.E.2d at 598 (citation omitted). Among other features, Curt must plausibly allege that Uriah intentionally interfered with one of Curt's known business relationships, without justification and through some

---

[3] The parties agree that Federal Circuit law glosses the elements needed for unfair competition claims based on a patent holder's false marketplace statements or activity by requiring bad faith. *See Serio-US*, 459 F.3d at 1320-21. In addition, to later establish the false advertising variant of unfair competition (sometimes called trade libel), Curt must prove (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its intended audience; (3) the deception is material in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *See Zenith*, 182 F.3d at 1348; *Hot Wax*, 191 F.3d at 819. In briefing, Curt momentarily pivots from discussing the Lanham Act false advertising claim asserted in its counterclaim to cite the subsection focused on false origin or association, *see* 15 U.S.C. § 1125(a)(1)(A), before then returning to state the elements of a false advertising claim. The court treats this as error rather than argument because nothing else comes from it.

independent illegal action.[4] *See Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *SWL, LLC v. NextGear Cap., Inc.*, 131 N.E.3d 746, 757 (Ind. Ct. App. 2019). An intentional fraud would not be a justified or legitimate business purpose, *see Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014) (defining unjustified), and it conceivably meets the understanding of an independent illegal act, an idea perhaps not squarely established in the law but also one not challenged today, *see, e.g., Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641 (7th Cir. 1999) (non-criminal illegal acts qualify).

Uriah challenges whether a false representation claim has been pleaded with particularity under any one of these theories, and because collectively they are premised on the same alleged false representations to online retailers, it only makes sense to address them together. The question is what standard to employ in adjudging this part of the pleading—plausibility or particularity too. Allegations of fraud and even allegations that sound in fraud require pleading under Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud [], a party must state with particularity the circumstances constituting fraud . . . ."); *Kahn v. Walmart Inc.*, 107 F.4th 585, 601-02 (7th Cir. 2024) (particularity is required when claim "sounds in fraud" or is "premised upon a course of fraudulent conduct"); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (applying Rule 9(b) to tortious interference claim based on fraud). To the extent the counterclaim hinges on a false or fraudulent representation (rather than some other type of act), Curt had an obligation to plead with particularity under Rule 9(b).

---

[4] In full later, for a claim of tortious interference with advantageous business relationships, Curt must ultimately prove (1) the existence of a valid business relationship, (2) Uriah's knowledge of the relationship, (3) Uriah's intentional interference with that relationship, (4) the absence of justification, (5) damages resulting from the wrongful interference, and (6) some independent illegal action. *See Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *SWL, LLC v. NextGear Cap., Inc.*, 131 N.E.3d 746, 757 (Ind. Ct. App. 2019).

This extra burden discourages hasty accusations of fraud, which "can do serious damage to the goodwill of a business firm or a professional person." *Bankers Tr. v. Old Republic Ins.*, 959 F.2d 677, 683 (7th Cir. 1992); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (heightened standard serves to protect a defendant's reputation from harm, minimize strike suits and fishing expeditions, and provide notice of the claim to the adverse party). This interest in greater precision is no less important in a patent case when a patent holder has a right to endeavor to enforce its patent, even if ultimately found to be invalid or not infringed. *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985).

The degree of particularity needed "depends on the facts of the case," but the rule typically "requires describing the who, what, when, where, and how of the fraud." *Kahn*, 107 F.4th at 594 (citation omitted); *accord Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 944 (7th Cir. 2024); *Molina Healthcare*, 17 F.4th at 739. In the case of a misrepresentation, a pleading must include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Tr.*, 959 F.2d at 683.

At this point, Uriah presents a two-fold attack—that, as a matter of law given the loose detail of this pleading, Curt cannot proceed on any unfair competition claim, and that, as a matter of particularity, this counterclaim falls short of pleading a claim when it sounds in fraud. The court addresses these arguments in order.

Uriah first says Curt fails to allege a false statement of fact in a commercial advertisement. It says an advertisement, as a matter of law, presupposes the dissemination of prefabricated promotional material, but Curt only alleges that Uriah communicated to online retailers (including

Amazon) that Curt's products infringed Uriah's '846 patent, with no indication that this occurred in a prefabricated commercial advertisement. Uriah thus argues that Curt cannot pursue an unfair competition claim (federal or state) based on false advertising. Curt counters by positing its claim on false "marketplace statements" of patent infringement to retailers, calling Uriah's discussion of "traditional" false advertising claims inapposite.

The means by which this communication occurred (the how) is left silent in the counterclaim, quite aside from other missing particulars. *See Bankers Tr.*, 959 F.2d at 683 (assessing "the method by which the misrepresentation was communicated"). Without question, the counterclaim never says whether a false representation was communicated to online retailers via a prefabricated advertisement or just a letter from the company or its counsel about alleged infringement (or some other means). The two sides seem to disagree on what law applies to the "advertising and promotion" prong of these unfair competition claims. Uriah cites Seventh Circuit law, which presupposes the "dissemination of prefabricated promotional material," *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001)), whereas Curt advances Federal Circuit law, which it characterizes as permitting unfair competition theories based on false "marketplace statements" of patent infringement, *see Zenith*, 182 F.3d at 1349.

The Federal Circuit has exclusive jurisdiction over appeals "relating to patents." 28 U.S.C. § 1295(a)(1). In deciding cases, it applies Federal Circuit law to issues unique to patent law, else it applies regional circuit law. *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604 (Fed. Cir. 2015) (citing *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc*)) ("We apply our own law to issues unique to patent law and regional circuit law to issues unrelated to patent law."). It follows that Federal Circuit law would determine the interpretation of a

Lanham Act or state unfair competition theory if it were an issue unique to patent law. If it isn't, regional circuit law would apply.

Curt doesn't explain why the question of whether the alleged statements were made in a commercial advertisement to perfect a false advertising claim under the Lanham Act is an issue unique to patent law. *Zenith*, which the company cites, doesn't answer this question as Curt might think. The Federal Circuit addressed the Lanham Act and state law unfair competition theories but only to settle whether they conflicted with or were preempted by patent or antitrust law. *Zenith*, 182 F.3d at 1347. Its contribution was to gloss the elements with the requirement that a party complaining of anticompetitive marketplace communications of patent infringement must prove bad faith. *See id.* at 1353-54. The Federal Circuit indicated that, under these circumstances, it would permit a Lanham Act claim to proceed based on such marketplace communications "if made in bad faith" and "assuming the elements of such a claim are otherwise made out." *Id.* at 1354. *Zenith* expressly passed on the question of whether marketplace statements of patent infringement would satisfy the Lanham Act's requirements and left the evaluation of these elements to the parties and district court in later proceedings. *Id.* at 1348 n.3. On the state theory (tortious interference), the Federal Circuit echoed the need for bad faith to avoid patent law preemption. *Id.* at 1355. Under *Zenith*, whether Curt's claims conflict with or are preempted by patent law turns on whether the counterclaim alleges bad faith, not whether the alleged statements were in prefabricated promotional advertisements.

Curt doesn't cite, nor has the court seen, a case in which the Federal Circuit evaluates the false-statement-in-commercial-advertisement aspect of an unfair competition theory under its law. Instead, the Federal Circuit interprets the Lanham Act according to the relevant regional

circuit's law. *Crocs, Inc. v. Effervescent, Inc.*, 119 F.4th 1, 3 (Fed. Cir. 2024) ("review appeals involving interpretation of the Lanham Act *de novo*, applying the law of the regional circuit in which the relevant district court sits"); *see, e.g.*, *SME Steel Contrs., Inc. v. Seismic Bracing Co.*, 2025 U.S. App. LEXIS 18236, 13-19 (Fed. Cir. July 23, 2025) (applying Tenth Circuit law to false advertising claim); *TRUSTID, Inc. v. Next Caller, Inc.*, 2023 U.S. App. LEXIS 4931, 6-14 (Fed. Cir. Mar. 1, 2023) (applying Third Circuit law). All roads thus lead to the conclusion that Seventh Circuit law controls this question, either outright or because the Federal Circuit would apply it anyway.

The Lanham Act prohibits false statements "in commercial advertising or promotion" that misrepresent one's or another's goods. 15 U.S.C. § 1125(a)(1)(B). Though the term is broader than just "published or broadcast materials," *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012), it is limited to "promotional material disseminated to anonymous recipients," *id.* (quoting *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001)). Promotion is "a systematic communicative endeavor to persuade possible customers to buy the seller's product," *Neuros*, 698 F.3d at 522, with advertising "a subset of persuasion [that] refers to dissemination of prefabricated promotional material," *First Health*, 269 F.3d at 804 (citation omitted). Thus, "an advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not." *Id.* at 803-04. Nor would "three person-to-person communications at trade shows" qualify, *Neuros*, 698 F.3d at 521 (citing *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005)), or when a person sends letters to a company's business partners falsely asserting he holds a patent and the company thus lacks authority to sell a product, *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003).

Uriah suggests the so-called false representations to retailers occurred through infringement notices or complaints from its lawyers, which would not constitute prefabricated or promotional advertisements. *Id.* at 733. Of course, the counterclaim leaves the means of communication silent, but the mere theorized possibility that these communications occurred in qualifying promotional material would not make this pleading plausible, *see Twombly*, 550 U.S. at 570 (conceivable isn't plausible), much less particular, *see Bankers Tr.*, 959 F.2d at 683. Curt cites cases concerning Lanham Act claims alleging false statements to retailers, but those cases don't discuss whether commercial advertising or promotion was pleaded, and some are also subject to different law, so they aren't instructive today.

The court cannot dismiss parts of claims, but Curt's "marketplace statements" theory of unfair competition isn't supported by prevailing law and its "false advertising" theory of unfair competition isn't pleaded with particularity, so the whole of an unfair competition claim falters. What's more, Curt argues its federal and state unfair competition theories together on this front, treating them coextensively and without suggesting that it might still have a claim under Indiana's unfair competition theory. Curt cannot proceed on a false representation claim, through the vehicle of federal or state unfair competition theories, without a more particularized pleading of the statements to online retailers and the means by which they occurred.

That leaves for discussion a tortious interference theory. Though unfair competition might have its roots in tortious interference, *Felsher*, 755 N.E.2d at 598, a tortious interference theory can exist without a false statement in prefabricated promotional material. In other words, Curt's failure to allege a false statement in advertising with particularity (the how) doesn't alone doom the company's tortious interference theory. Under Indiana law, an interfering act need not

14

appear in promotional advertising. It need only be unjustified and borne of some independent illegal action. *Brazauskas*, 796 N.E.2d at 291; *SWL*, 131 N.E.3d at 757. Nor does Uriah challenge this particular state law theory based on this advertising or promotion issue. Instead, Uriah argues that Curt failed otherwise to plead tortious interference with particularity.

On this front, Uriah is right again. And the failing here covers any false representation claim, whether under unfair competition or tortious interference. Curt's allegations about Uriah's misstatement to online retailers are insufficiently particular. In fairness, the counterclaim states the who and what—that Uriah (the who) falsely represented to online retailers that Curt products infringed the '846 patent (the what) [15 ¶ 61]. This may not identify the precise individual or representative who made the false statement, but a corporate form may at times satisfy the necessary level of particularity, even if less so. *See Vanzant*, 934 F.3d at 739. But the counterclaim omits other necessary particulars, including when, where, and how the statements occurred. *See Kahn*, 107 F.4th at 594. The counterclaim alleges no timing or date; it shares nothing about the place where a false statement happened; and, even if a place might not be logical and might instead materially merge with the how, it fails to identify the method by which any one false statement occurred. *See Bankers Tr.*, 959 F.2d at 683.

Despite Curt's citations to its counterclaim, the particulars for these false representations to online retailers are missing. On when, Curt says in its brief that Uriah made false assertions to retailers in lead-up to and after filing its lawsuit on October 24, 2024, but this added fact remains rather imprecise all its own and, other than knowing the lawsuit filing date, its pleading omits the timing of these representations. The court read the allegations that Curt cited for this timing, and it's just not there. As to where, Curt says in its brief that Uriah directed its statements through

Amazon's marketplace enforcement mechanisms; but, the counterclaim omits such detail, without any indication what particular mechanisms these were. Once more, the court read the allegations that Curt cited for this, and it's just not there. For how, Curt argues that it alleged that Uriah filed complaints with Amazon, causing certain marketplace repercussions. This falls short of stating the means or method of communication—it's not clear if the misrepresentations occurred by phone, email, letter, fax, an online form, in person, or by some other means. "The precise level of particularity required under Rule 9(b) depends on the facts of the case," *Kahn*, 107 F.4th at 594, but halfway particular isn't particular here.

The allowance for a pleader to augment allegations in briefing cannot help Curt. At times under Rule 12, a party defending the pleading's adequacy may point to facts in a brief or affidavit to show that there are facts within the pleading's scope that, if proved (a matter for trial), would entitle it to judgment. *United States ex rel. Hanna v. City of Chi.*, 834 F.3d 775, 779 (7th Cir. 2016); *see also Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"). But this cannot save a party who has an obligation to plead a claim with particularity. Rule 9(b) "is an exception to the notice pleading regime," and "the pleader is not free to hold back and add facts via affidavit or brief." *Hanna*, 834 F.3d at 779; *see also Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal") (citation omitted).

Despite these truisms, Curt cites two cases in which unfair competition allegations met the requirements of Rule 9(b) and argues its counterclaim is at least as particular. Its citation to

*Impeva Labs, Inc. v. Sys. Plan. Corp.*, 2012 U.S. Dist. LEXIS 120011, 3 (N.D. Cal. Aug. 23, 2012), perhaps isn't the best tender. There the pleading alleged System Planning Corporation (who) claimed patent infringement in bad faith (what) on April 28, 2010 (when) in related bankruptcy proceedings (where) in a proof of claim (how). This meets Rule 9(b)'s particularity requirement in ways Curt's counterclaim does not. Its other case, *Miche Bag, LLC v. The Marshall Group, Inc.*, 2011 U.S. Dist. LEXIS 5612, 11-13 (N.D. Ind. Jan. 18, 2011), might be better, except that the movant there argued only one thing—that the pleading failed to identify who made the misrepresentation. That scope of argument is altogether different than the one presented today, and it passes over the missing dimensions that Rule 9(b) expects of this counterclaim. *See Kahn*, 107 F.4th at 594; *Bankers Tr.*, 959 F.2d at 683.

Accordingly, the court must grant the motion to dismiss the federal and state unfair competition and tortious inference counts as they rest on false representations or advertising to retailers—count 3 and 6 in their entirety and count 5 insofar as it presents a claim based on these false representations to online retailers. As presented, such a claim either fails as a matter of law under Rule 12(b)(6), or the claim has not been pleaded with particularity to support relief through federal or state unfair competition theories or a tortious interference theory under Rules 9(b) and 12(b)(6). To the extent Curt seeks to amend its counterclaim, the company must account for Rule 9(b)'s requirements and the applicable substantive law, consistent with this opinion.

B. *Bad Faith Lawsuit (Counts 4 and 5).*

That leaves for discussion Curt's alternative claim—that Uriah pursued an infringement suit in bad faith—presented through the lens of unfair competition (under Indiana law) and through the lens of bad faith assertion of patent infringement (under the Indiana Patent Protection Act or IPPA).

No one debates whether the filing of a baseless lawsuit for patent infringement might constitute one of the many nameless forms of unfair competition under Indiana law. *See Felsher*, 755 N.E.2d at 598-99. And Indiana law provides that "[a] person may not assert a claim of patent infringement in bad faith," Ind. Code § 24-11-3-1, and confers a cause of action on any victim of a bad faith claim, Ind. Code § 24-11-5-1. The IPPA identifies nonexhaustive factors that might reflect bad faith, Ind. Code § 24-11-3-2, or alternatively an assertion of patent infringement without bad faith, Ind. Code § 24-11-3-3. Some factors suggesting bad faith include a knowing and meritless assertion of infringement, previous threats of lawsuits that lacked details about the patent and infringement, and previous infringement lawsuits in which a court found the claim to be meritless. Ind. Code §§ 24-11-3-2(6), (8).

Curt recognizes that it must allege bad faith within the meaning of *Zenith*, 182 F.3d at 1355. *See also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335-37 (Fed. Cir. 1998). No one debates whether there is any real daylight between Indiana's factor-based assessment of bad faith and bad faith as defined by Federal Circuit law. Bad faith is determined on a case-by-case basis, *Zenith*, 182 F.3d at 1354, and has "both objective and subjective elements, the former [being] a threshold requirement," *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008). The objective element requires a finding that the claims of infringement were

"objectively baseless, meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." *Id.* at 1338-39 (quotations and citation omitted); *see also Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375-77 (Fed. Cir. 2004) (citing *Pro. Real Est. Invs. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)) (establishing "objectively baseless" standard). The court only assesses subjective bad faith once the claims are found objectively baseless. *Judkins*, 529 F.3d at 1338-39; *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1343-44 (7th Cir. 2023). It is bad faith when a patentholder represents that a competitor infringes its patent but "knows that the patent is invalid, unenforceable, or not infringed." *Zenith*, 182 F.3d at 1354.

The parties once more dispute the pleading standard for this bad faith claim—plausibility under Rule 8 or particularity under Rule 9(b). Bad faith isn't necessarily a one-to-one proxy for fraud. *Compare Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991) ("while bad faith 'may be averred generally,' allegations of fraud must be supported by particular statements"), *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022) (bad faith "is a difficult term to define" as it "may be outright lying" or "something as mundane as noticing someone's mistake and saying nothing about it"), *and Mauger v. Metro. Life Ins.*, 589 F. Supp.3d 954, 959-61 (N.D. Ind. 2022) (assessing bad faith claim under 8(a) and fraud claim under 9(b)), *with Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 398 (7th Cir. 2018) ("Deceptive actions or fraud can be relevant to whether a union acted in bad faith.") (quotations and citation omitted); *see also Kahn*, 107 F.4th at 601 (deceptive practice requires particularity whereas unfair practices would not); *Vanzant*, 934 F.3d at 739 (distinguishing theories that marketing practices were deceptive versus unfair).

Perhaps because the unfair competition count encapsulates two claims—one based on false representations and one grounded in a baseless lawsuit—and perhaps because the counterclaim at times summarizes these acts together in the factual background, Uriah tends to read the counterclaim too expansively to mean that Curt alleges that Uriah made false statements in the suit. But Curt seems careful to compartmentalize the two claims. The company might intensify its allegations at one point by calling Uriah's lawsuit "extortive" and seeking "to obtain a quick settlement and stifle competition" [15 ¶ 60]; though this may describe bullying, coercion, or some measure of disingenuousness or ulterior motive, it doesn't sound in fraud. A fair reading is that Curt alleges that the lawsuit is baseless or in bad faith, but not one borne of fraud, and when "both fraudulent and nonfraudulent conduct violating the same statute or common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b)." *Appvion*, 99 F.4th at 945 (citation omitted).

Curt alleges that Uriah filed this lawsuit in bad faith. Curt offers a fair amount of factual detail in an attempt to explain why its products don't infringe the '846 patent [15 ¶ 33-59]. Uriah disagrees with the import of these allegations—for instance, challenging Curt's selection of portions of the '846 patent specification and a definition of "rear wall"—but today's motion only calls on the court to determine whether Curt plausibly alleges a bad faith lawsuit, not whether it has proven this claim, or even whether the allegations are probable. *See Appvion*, 99 F.4th at 945; *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Curt adds allegations that Uriah has done this before, as repeat conduct with other competitors [15 ¶ 22-28]. Even omitting the unparticular allegations of fraud in the marketplace, *see Appvion*, 99 F.4th at 945, and even presuming the patent's validity under 35 U.S.C. § 282, Curt pleads that Uriah's allegations of

infringement were filed in bad faith, knowing that they were objectively baseless and knowing that the company had no realistic expectation of prevailing [15 ¶ 30-31, 58-59]. Uriah calls these allegations conclusory, but they really aren't when couched in Curt's factual explanation for calling the lawsuit baseless. Proof (or disproof) is for another day—so is any claim construction arguments the parties might present in the future. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

Accordingly, the court must deny the motion to dismiss the claim for filing a bad faith lawsuit asserting patent infringement in counts 4 and 5. To the extent the parties debate the pleading of bad faith as an overlay to any other theory for false representations to retailers, the court sees it no differently. It just so happens that that separate claim under various theories cannot survive based on the law or Rule 9(b).

C. *Leave to Amend.*

Curt asks that, if the court dismisses any claim, it should be dismissed without prejudice and leave granted to the company to amend. Uriah says the court should deny any request to amend because it would be futile. There may be a legal bar at play here, at least in part, but missing particularity could rarely be called incurable. "Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015). The court cannot say an amendment would be futile or otherwise unwarranted, so grants leave for Curt to amend.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART Uriah's motion to dismiss [24], DISMISSES WITHOUT PREJUDICE counts 3 and 6 in their entirety and count 5 insofar as it presents a claim based on false representations to online retailers, DENIES the motion insofar as Curt alleges a claim for filing a bad faith lawsuit asserting patent infringement in counts 4 and 5, and GRANTS Curt leave to amend its counterclaim by October 24, 2025.

SO ORDERED.

October 10, 2025                              *s/ Damon R. Leichty*
                                             Judge, United States District Court

23