UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| URIAH PRODUCTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CURT MANUFACTURING LLC,<br><br>Defendant. | CAUSE NO. 3:24cv873 DRL-SJF |

OPINION AND ORDER

Curt Manufacturing LLC moves to exclude portions of Uriah Products, LLC's final infringement contentions, arguing that certain ones are inconsistent with Local Patent Rule 5-1(a)(3) and futile. Curt also seeks its attorney fees for this motion. Uriah argues that Rule 5-1(a)(3) does not govern what it calls refinements to its theories. The court denies the motion.

BACKGROUND

Much has been said already about the case's background in ruling on the motion to dismiss the counterclaims and during claim construction. *See Uriah Prods., LLC v. Curt Mfg. LLC*, 2026 U.S. Dist. LEXIS 240805 (N.D. Ind. June 2, 2026); *Uriah Prods., LLC v. Curt Mfg. LLC*, 809 F. Supp.3d 824 (N.D. Ind. 2025). In short, this is a patent infringement suit involving U.S. Patent No. 10,857,846 ('846 patent) for an adjustable trailer hitch assembly. Uriah, which manufactures and distributes trailer hitches and ball mounts, alleges that Curt's products infringe this patent.

After suit commenced, the parties narrowed their focus on what the '846 patent means by a "rear wall for the slotted mortise hole." Their dispute over this term's construction highlighted the allegation of infringement and the defense to it—Uriah posited a meaning that

might locate pin-receiving holes in many places, whereas Curt sought to limit where the pin-receiving hole could go so as to eliminate its product design (one that has pin-receiving holes in the mounting block's sidewalls rather than what it viewed as the rear wall of the mortise hole).

Uriah served its preliminary infringement contentions on May 5, 2026 [67-2, 67-3]. Uriah contended that the pin-receiving holes in Curt's products were located in the rear wall. Uriah also contended that the "rear wall for the slotted mortise hole" extended at least to the rear wall of the vertical through hole. Both theories were envisioned to demonstrate that the location of the pinholes in Curt's products was encompassed within that same "rear wall." These arguments filtered into the *Markman* hearing. Not yet centerstage at that point was another preliminary infringement contention regarding the doctrine of equivalents, asserting that "if a particular claim element is deemed not literally present, such claim element is, at a minimum, present under the doctrine of equivalents" because "the differences . . . are insubstantial" and "[b]oth practice the same function in substantially the same way to achieve the same result."

The court held its claim construction hearing on February 5, 2026. In its opinion on June 6, 2026, the court construed the term "rear wall for the slotted mortise hole" to mean "that portion of the web that defines the rear wall of the generally rectilinear slotted mortise hole and extends, in depth, from the rear surface of the slotted mortise hole to the vertical through hole of the web in such a way as to contain (or to be formed with) a pin-receiving hole into that vertical through hole." *Uriah*, 2026 U.S. Dist. LEXIS 240805 at 26. In short, the term rear wall must accommodate five defining characteristics—it must be (1) a wall, (2) in particular a rear wall, (3) and, more particularly still in relation, the rear wall for the generally rectilinear slotted mortise hole, (4) with that rear wall defined by the web of the mounting block, and (5) formed with a pin-

receiving hole into the web's vertical through hole. In doing so, the court rejected Uriah's proposed construction for the rear wall—a "three-dimensional portion of the web that defines a part of the mortise hole"—as overbroad and imprecise. But the court also acknowledged that the rear wall had depth and declined Curt's starting construction of the rear wall as a mere "surface" or "boundary," a question of depth that eventually became a source of agreement between the parties, though the court explained that the rear wall's depth could not be "boundless" or consist of the entire web.

Thereafter, on June 30, 2026, Uriah served its final infringement contentions, which Curt characterizes as altering Uriah's preliminary ones [67-5, 67-6]. Uriah identified no new or additional accused products or processes. The company instead advanced the theory that the pin-receiving holes in the accused products "begin in a sidewall of the mounting block" and that these holes "necessarily intersect and cross through at least a portion of the rear wall for the slotted mortise hole." This theory Curt calls new, having not been presented in Uriah's preliminary infringement contentions. In addition, Uriah asserted a doctrine of equivalents theory, contending that, to the extent the pin-receiving holes begin in the sidewall of the mounting block, they are equivalent to holes beginning in the rear wall because they "pass through or intersect the rear wall for the slotted mortise hole" and "perform substantially the same function . . . , in substantially the same way . . . , to achieve substantially the same result[.]"

Curt seeks to exclude what it views as new theories of infringement under N.D. Ind. L.P.R. 5-1(a)(4) because Uriah omitted a separate statement of good cause for its amendments and any explanation for why such theories could not have been raised in preliminary contentions. Curt also raises the specter of whether any such amendments would be futile.

STANDARD

Because the court possesses the inherent power to manage its own docket, *see Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1321 (Fed. Cir. 2016) (citing *Ryan v. Gonzalez*, 568 U.S. 57, 74 (2013)), the court may "consider and take appropriate action to facilitate the just, speedy, and inexpensive disposition of all matters before [it]." *Id.* (citing Fed. R. Civ. P. 1, 16). The court's local patent rules, which "are essentially a series of case management orders," are one such means of accomplishing this task. *Id.* at 1320-21 (quoting *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015)).

Some local patent rules are intended to serve an objective that "has been difficult to achieve through traditional discovery mechanisms such as contention interrogatories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). Such local rules permit the parties to pin each other down on theories of liability or defense—namely, to "require parties to crystallize their theories of the case early in the litigation to prevent a shifting-sands approach to claim construction." *Keranos,* 797 F.3d at 1035 (cleaned up); *see also O2 Micro*, 467 F.3d at 1365-66 (noting the local patent rules require the parties to provide "early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery"). In serving this purpose, the local rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1366. Accordingly, when a party fails to abide by the local patent rules, the court is permitted to impose a "just" sanction, including "refusing to allow the disobedient party to support or oppose designated claims or defenses, or

prohibiting that party from introducing designated matters in evidence." *Id.* at 1363 (citing Fed. R. Civ. P. 16(f), 37(b)(2)(B)).[1]

Interpretation of a district's local patent rules is governed by the law of the Federal Circuit and not the regional circuit where the court sits. *Id.* at 1364; *see also Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320 (Fed. Cir. 2016) (reviewing interpretation of such rules under an abuse of discretion standard). Decisions enforcing the court's local patent rules will be affirmed unless they are "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *Howmedica*, 822 F.3d at 1324 (quoting *O2 Micro*, 467 F.3d at 1366-67). This "highly deferential review standard" is afforded "so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Id.* (quoting *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002)).

DISCUSSION

At the onset, local patent rules require any party claiming patent infringement to serve on all other parties its preliminary infringement contentions. N.D. Ind. L.P.R. 3-1(a). This document must include an infringement claim chart for each accused product or process (called by rule an "accused instrumentality"), and that chart must contain the following contentions: (1) each claim of each patent allegedly infringed by the accused instrumentality, (2) a specific identification of where each claim limitation is found within each accused instrumentality, and (3) whether each limitation of each asserted claim is present in the accused instrumentality, either literally or under

[1] For procedural issues not unique to patent law—such as the choice and scope of sanctions for violating a case management order—the court applies the law of the regional circuit. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2012).

the doctrine of equivalents. L.P.R. 3-1(b). Later, after claim construction, any party asserting infringement must serve on all other parties its final infringement contentions. L.P.R. 5-1(a).

This is a key moment of certainty. A party may not assert at trial any contentions not set out in its final contentions. L.P.R. 5-1(a)(2). In addition, final infringement contentions may not identify additional accused "products or processes" omitted in the preliminary infringement contentions without good cause. L.P.R. 5-1(a)(3). Accused infringers may seek to exclude such "amendments" on the basis that good cause does not exist, else unopposed amendments are deemed effective. L.P.R. 5-1(a)(4), (a)(6).

Although the district's local patent rules do not explicitly define what constitutes "good cause," they offer two examples—the discovery of previously undiscovered information and an unanticipated claim construction ruling. L.P.R. 5-1(a)(3). Any party wishing to amend its final infringement contentions, as specified by the rule, "must include a separate statement outlining the specific grounds that it claims constitute good cause for the amendment." *Id.* The rules emphasize the expectation of compliance by the parties, and even the court's alignment with the rules absent exceptional circumstances. L.P.R. 1-1.

To begin, Curt seeks to exclude from Uriah's final infringement contentions its theory that the "pin-receiving holes" in the accused products "necessarily intersect and cross through at least a portion of the rear wall for the slotted mortise hole." Curt claims this theory of infringement never appeared in Uriah's preliminary contentions, and Uriah has not provided a separate good cause statement for what it views as an amendment under L.P.R. 5-1. In essence, Curt complains that Uriah never explains why this new theory could not have been asserted earlier, why the amendment was required after claim construction, or any other inkling of good

cause for amendment. Curt also views this theory as a futile addition because it proves inconsistent with the court's claim construction (or rehashes claim construction arguments rejected by the court).

In response, Uriah argues that the local patent rules don't authorize this relief. Uriah maintains that their plain language only requires good cause when final infringement contentions identify an "additional accused *product* or *process* not contained in the preliminary infringement contentions." L.P.R. 5-1(a)(3) (emphases added). And, as segue, only when the final infringement contentions include an additional accused "product or process" can a party seek exclusion on good cause grounds. Uriah posits that this reading preserves a necessary distinction between preliminary and final infringement contentions.[2] Uriah characterizes Curt's motion to exclude as an indirect attack on the merits of its infringement theories rather than a genuine motion under L.P.R. 5-1(a)(4). For instance, Uriah argues that the issues raised in Curt's motion, concerning whether it "lost claim construction" or the disputed doctrine of equivalents theory, should be left for summary judgment or trial, not a procedural motion under this local rule.

The court begins with the district's patent rules. Like other procedural rules, local rules are to be enforced according to their plain meaning, "and generally with them, as with a statute, when the court finds the terms unambiguous, judicial inquiry is complete." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) (cleaned up); *see also Business Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 540-41 (1991); *see, e.g., Shamshoum v. Bombay Cafe*, 257 F. Supp.2d 777, 780 (D.N.J. 2003) (applying canon of construction to court's local rules); *accord Samsung Elecs.*

[2] Uriah argues, in the alternative, that, if the court finds Curt's motions properly invoke L.P.R. 5-1(a), its "pin-receiving holes" theory is not a new theory but consistent with the content and scope of the preliminary infringement contentions.

*Co. v. Rambus, Inc.*, 440 F.Supp.2d 495, 506 (E.D. Va. 2006) (enforcing plain meaning of federal rules with liberal construction).

The text refers to an "amendment" but definitionally in reference to the identification of "additional accused products or processes," not any old amendment. L.P.R. 5-1(a)(3) specifies that "additional accused products or processes" (what L.P.R. 3-1(b) likewise calls an "accused instrumentality") must have good cause and requires a separate statement of good cause "for the amendment." In doing so, the text of the rule delineates precisely what the rule means by way of an "amendment" that requires this showing of good cause.

To the extent any question might linger, the title-and-headings canon, which none of the local patent rules displaces, underscores this reading. L.P.R. 5-1(a)(3), entitled "Amendments" and adopted by district judges just so, neither undoes nor limits this textual understanding of an amendment; instead, it remains consistent with it. *See Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947). Thus when L.P.R. 5-1(a)(4) permits an accused infringer to challenge an amendment that lacks good cause, the rule speaks in terms of this same type of "amendment." One might then ask what sources the right to offer other types of refinements to preliminary infringement contentions, for certain earlier ones might not be appropriate or rule-based, *see, e.g., Fortress Iron L.P. v. Digger Specialties, Inc.*, 2025 U.S. Dist. LEXIS 278116, 8-10 (N.D. Ind. Dec. 19, 2025), and the simple answer now is the task of serving final infringement contentions, with those by design governing any trial.

The court agrees with Uriah that L.P.R. 5-1(a)(3)'s plain text concerns additional accused products or processes (or an accused instrumentality) and not every mere refinement or elaboration that the parties happen to include in their final infringement contentions, now with

the benefit of the claim construction process, fact discovery, and the court's ruling on claim construction.[3] Because Uriah's preliminary and final infringement contentions concern exactly the same products and processes, Uriah was not required to file a separate statement of good cause. There are no exceptional circumstances to depart from the rule. This is a straightforward and pragmatic application of the rule, not a persnickety one that forecloses presentation of the merits. The circumstances might be different if the proposed change implicated an entirely new claim construction, thereby subverting the work that had come before, but no one has advanced such a problem today.

If the local rules committee and thereafter this district's judges intended to reach more than just additional products and processes, they (we) could easily have said so. The rule could require good cause for other types of amendments at the final contentions stage—say, for all claims or theories—but that has not been done. Illustratively, without staking out a position on whether this might be advisable, many other districts who seek to regulate something more by way of content or theories have local patent rules that spell this out clearly for final infringement contentions. *See, e.g., EON CorpIP Holdings LLC v. Aruba Networks Inc.,* 2013 U.S. Dist. LEXIS 161274, 12-13 (N.D. Cal. Nov. 9, 2013) (reading L.P.R. 3-6, which states that an "[a]mendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause," to include amendments asserting new theories); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2012 U.S. Dist. LEXIS 38740, 20-22 (N.D. Ill. Mar. 21, 2012) (interpreting L.P.R.

---

[3] Discovery remains open. Fact discovery closes December 2, 2026, and all discovery on February 17, 2027.

3-4, which reads that "a party may amend its Final Infringement Contentions . . . only by order of the Court," to bar newly asserted theories without good cause).

Curt adds, citing L.P.R. 5-1(a)(2), that because final infringement contentions control any trial, the entirety of L.P.R. 5-1 must have been intended to regulate not just the accused instrumentality (by way of product or process) but also theories. In a more precise manner of speaking, that may be true; but, as stated, Curt's interpretation takes it too far and violates bedrock interpretative principles. For one, this is simply not what L.P.R. 5-1(a)(3) says, and intent best originates in the plain text.

For another, Curt's position would invite the court to rewrite rather than merely enforce the rule, appreciating that the use of different terms often denotes different ideas. *See, e.g., Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457-458 (2022); *see generally Symantec Corp. v. Comput. Assoc. Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008) ("general assumption is that different terms have different meanings"). In fact, a surefire way for the rule drafters and adopters to signal two different things would be to use one term in one place and another term elsewhere. And lo and behold, L.P.R. 5-1 does so. It distinguishes between final infringement "contentions" (to include theories and the whole of what might be argued) and "amendments" (specific to newly accused products and processes), with final contentions about accused instrumentalities set for trial, and any that "identify" new accused instrumentalities requiring a showing of good cause. Else L.P.R. 5-1(a)(1)-(3) would be read disharmoniously as a set when they should be read harmoniously. *See USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 516 (7th Cir. 2022) ("provisions of a text should be interpreted in a way that renders them compatible") (quotations and citation omitted). And words would be read out or rendered meaningless. *See Microsoft Corp. v. i4i Ltd.*

*P'ship*, 564 U.S. 91, 106 (2011); *Duncan v. Walker*, 533 U.S. 167, 174 (2001). It would be nonsensical to read "contentions" and "amendments" synonymously when one, in the guise of an argument, identifies the other. *See* L.P.R. 5-1(a)(3) ("Final infringement contentions may not *identify* additional accused products or processes . . . without good cause.") (emphasis added).

Curt also argues that Uriah's final contentions assert, for the first time, a new or more specific doctrine of equivalents theory. Uriah contends that the pin-receiving holes beginning in a sidewall of the mounting blocks are equivalent to the holes beginning in the rear wall because they "pass through or intersect the rear wall for the slotted mortise hole" and "perform substantially the same function . . . , in substantially the same way . . . , to achieve substantially the same result[.]" In fairness, as Curt acknowledges, Uriah included in its preliminary contentions an outline of this theory, even if then a slightly thinner one, but now the company colors in the lines to articulate a more developed view. Under L.P.R. 3-1(b)(3), Curt argues that Uriah was required to identify whether a limitation was "literally present" under the doctrine of equivalents in its preliminary contentions, not just generically reserve the argument. Uriah counters that it expressly disclosed this theory in both its complaint and preliminary contentions, and the mere fact that the company provides more detail now, after discovery and a claim construction ruling, is not the same as asserting a brand-new theory.

A doctrine of equivalents theory, an exceptional theory rather than the common rule, permits a finding of infringement when an accused product or process is the substantial equivalent of a patented invention. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 35 (1997); *Nexstep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024). The essential inquiry is whether the accused product or process contains elements identical or

equivalent to each element of the claimed invention. *Warner-Jenkinson*, 520 U.S. at 40. "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359 (Fed. Cir. 2000). The test is whether the differences between the two are so insubstantial to one of ordinary skill in the art that they should be treated as equivalent, *id.*, or, framed another way, whether the accused product performs substantially the same function, in substantially the same way, to achieve the same result, *see Nexstep*, 119 F.4th at 1370; *see also Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1579 (Fed. Cir. 1984). In fairness, the doctrine demands a certain level of precision in its presentation and proof—a narrow limitation-by-limitation comparison of the individual elements of the accused product and the claimed elements of the patented invention. *See Nexstep*, 119 F.4th at 1370-71.

Curt's argument once again tends to break down under L.P.R. 5-1(a)(3), which doesn't prohibit a party from distilling its theories after claim construction when discovery or the court's ruling (which here declined each side's full pitch) make it reasonable for the party to do so, *see, e.g.*, *CellCast Tech., LLC v. United States*, 152 Fed. Cl. 414, 427 (Fed. Cl. 2021), thereby preserving that balance between the need for certainty as to one's legal theories and the right to develop additional information, *O2 Micro*, 467 F.3d at 1366. This theory wasn't out of the blue. Uriah included a foothold in its preliminary contentions with some reasonable measure of detail. After all, this district's rules required preliminary contentions to state whether each limitation of a claim was "literally present" or "present under the doctrine of equivalents." L.P.R. 3-1(b)(3).

To be clear, Uriah didn't just "reserve the right" to argue the doctrine of equivalents. *See, e.g., Days Corp. v. Lippert Components, Inc.*, 2019 U.S. Dist. LEXIS 216484, 7 (N.D. Ind. Dec. 17,

2019). It specifically noted that any differences between a "rear wall for slotted mortise hole of the vertically-adjustable hitch-ball mounting block formed with a pin-receiving hole into the through hole and adapted for a pin to secure the hitch ball" and Curt's design, which Curt represented to Uriah as including pin-receiving holes beginning in the sidewall of the mounting block, were insubstantial. That Uriah's doctrine of equivalents theory became richer in its final framing does not show that it alleges something truly new, only that discovery and claim construction worked to refine perspectives. *Primos v. Hunter's Specialties, Inc.* 451 F.3d 841, 851 (Fed. Cir. 2006) ("purpose of discovery is to enable parties to obtain the factual information needed to prepare their cases for trial"); *see, e.g.*, *Fast Felt Corp. v. Owens Corning Roofing & Asphalt*, LLC, 2017 U.S. Dist. LEXIS 212728, 2-3 (N.D. Ohio July 26, 2017) (post-*Markman* filings may refine infringement theories to conform to claim construction, though not spring entirely new ones on the other side that disrupt the schedule). No one presents in the court's estimation a real harm from this framing, and the parties still have room for discovery and dispositive motions.

"The purpose of infringement (and non-infringement) contentions is to provide notice of the plaintiff's theories of infringement (and the defendant's theories of non-infringement) early in the case because, in practice, it is difficult to obtain such information through traditional discovery means, such as interrogatories." *Fujitsu*, 2012 U.S. Dist. LEXIS 38740 at 25-26. From the beginning, Uriah has maintained that the challenged "rear wall" is a three-dimensional portion of the web (albeit an expansive definition of "rear wall") that is "formed with" pin-receiving holes, even those that enter the sidewall of the web [67-2]. Curt understood, even before, and as early as its February 7, 2025 letter to Uriah, that the holes "bored into the side of the D-shaped mounting block" were a feature of concern [67-1]. For limitations, Uriah identified an alternative

doctrine of equivalents theory in its preliminary contentions. At this point, Curt was sufficiently on notice, in a way to foster claim construction and discovery with precision, that Uriah contended that Curt's design for its pin-receiving holes performed the same function, in substantially the same way, to achieve the same result—and notably, with reference to the specific element that allegedly made it so, *see Nexstep*, 119 F.4th at 1370-71—or that any differences were insubstantial [67-2].

Curt suggests that Uriah's position would establish an intradistrict conflict with *ArrMaz v. Rieth-Riley Constr. Co. Inc.*, 2026 U.S. Dist. LEXIS 44224 (N.D. Ind. Mar. 4, 2026). Not so. There, esteemed jurist and colleague, Judge Gretchen Lund, addressed certain additions to the patent owner's final infringement contentions that, as argued, had not appeared in the company's preliminary infringement contentions. *ArrMaz* involved two patents, both directed to surface-paving technology. The patent holder argued that a construction company infringed on its method of creating a surface coating that maintained crack and rut-resistant properties in various contracts with the Indiana Department of Transportation (IDOT). The case thus concerned both compositions and a process (a method of application), rather than just an accused product.

For one, Judge Lund struck from the patent holder's final contentions a new contract between the construction company and IDOT, but that seems entirely consistent with what the court has said today—namely, that as a new accused instrumentality (*i.e.*, another instance of a process that used its patented method for coating roads), the patent holder needed good cause to justify its amendment. Therein lies a fundamental difference between that case and this one. Without that showing there, it was stricken, and this court would not suggest a different result in

its opinion today. It just so happens here that Uriah focuses on the same accused instrumentalities (products), not new ones.

For another, Judge Lund allowed the patent holder to present a doctrine of equivalents theory in the company's final infringement contentions. Yes, the court did so without broaching the precise subject of whether the rule required a showing of good cause for all types of amendment, but it seems because the parties never argued the point and assumed that the local rule required good cause for any amendment. A good judge only decides the issues before her. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (party presentation rule). That doesn't suggest a different result here. And regardless, after weighing diligence and prejudice, and considering the nature of the doctrine and what had been learned in discovery, and what had been learned in discovery about a specific element of the construction company's process (the speed that any spray paver was operated), Judge Lund found that good cause existed anyway and permitted the doctrine to be presented, though the preliminary contentions presented an arguably sketchier outline of the theory there than Uriah presented in its preliminary contentions here. If the balance between certainty and refinement there justified the doctrine's presentation after a scant start, it likewise does so here based on a more developed start, not to mention for reasons that also inkle good cause.[4] In short, striking the final contentions for these two refinements of theory would not be a just order. *See* Fed. R. Civ. P. 16(f)(1); *O2 Micro*, 467 F.3d at 1363.

[4] At times, Curt seems to suggest that the decision reached by a fellow judge in this district forecloses this court from reaching an alternative reading or resolution here. Although the court has the utmost respect and reverence for the well-reasoned opinions of its peers, "a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation omitted).

From this point, Curt argues futility. Futility may at times be a fair consideration in addressing an amendment, *see, e.g., Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1332-33 (Fed. Cir. 2000) (considering the futility of a proposed amendment to a party's complaint), but the court views these final contentions as without "amendments" as defined by the local rule and without foreclosing either side from seeking a dispositive ruling should the claim construction ruling and undisputed facts necessitate summary judgment. Infringement contentions in this district aid argument, claim construction, discovery, and efficiency, with the goal of crystallizing subjects earlier rather than later—that remains true—but the collective operation of the federal system's rules and the district's local rules leaves daylight between a procedural motion to exclude and a dispositive motion for summary judgment. The court is of the mind, after reviewing the arguments about futility, that this motion crosses over into issues properly raised at summary judgment. Else, at least on this record, a motion to exclude based on the starting premise that the other side merely omitted a statement of good cause with its final infringement contentions would end with a draconian punchline about the arguable merits.

## CONCLUSION

For these reasons, the court DENIES the motion to exclude [55].

SO ORDERED.

October 27, 2026

*s/ Damon R. Leichty*
Judge, United States District Court